Judge Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. CR20-85 RAJ |
|---|---|
| Plaintiff, | **OPPOSITION TO DEFENDANT HARBANS SINGH'S MOTION TO DISMISS (DOCKET NO. 19)** |
| v. | |
| HARBANS SINGH, | |
| Defendant. | |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and William Dreher, Assistant United States Attorney for said District, respectfully submits this opposition to Defendant Harbans Singh's Motion to Dismiss (Dkt. 19).

Singh's motion should be denied because the running of the statute of limitations on Counts One and Two was properly suspended by an order from the Chief Judge of this District under 18 U.S.C. § 3292(a). *See* Exhibit A (Court's Section 3292(a) order in this case); Exhibit B (government's application for such order). Under that statute, when the government seeks foreign evidence via an "official request" (such as, in this case, a request under a Mutual Legal Assistance Treaty (MLAT)), the district court must suspend the statute of limitations from "the date on which the official request is made" until "the date on which the foreign [country] takes final action on the request." 18 U.S.C. § 3292(a)(1), (b). Here, the undisputed facts show that the government's official request was submitted

Opposition to Singh Motion to Dismiss (Dkt. 19) - 1
*United States* v. *Singh*, No. CR20-85-RAJ 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

April 3, 2018, and that the United Kingdom did not take "final action" on that request until, at the earliest, June 15, 2020. Accordingly, the statute of limitations was properly suspended during that 26-month period.

That suspension makes both Counts One and Two timely. The earliest date that Counts One and Two began running, according to Singh, are November 24, 2014, and July 20, 2015, respectively. Singh agrees that a 5-year statute of limitations applies to Counts One and Two. *See* Dkt. 19 at 9. On April 3, 2018, even assuming Singh's start dates are correct, only 3 years, 4 months, and 10 days had elapsed on the statute of limitations on Count One, and 2 years, 8 months, and 14 days had elapsed on Count Two. The limitations period was then suspended from April 3, 2018, until at least June 15, 2020, for the reasons discussed below. Singh was indicted 1 month and 7 days after June 15, on July 22, 2020. Thus, at most, only 3 years, 5 months, and 17 days of the 5-year limitations period applicable to Count One had elapsed before Singh was indicted, and only 2 years, 9 months, and 21 days had elapsed on the limitations period applicable to Count Two. Counts One and Two are therefore timely.

Singh's various objections to the foregoing statute-of-limitations analysis are without merit.

## I.     FACTUAL BACKGROUND

The government has met and conferred via telephone regarding the undisputed facts necessary for the Court to decide this motion. The government understands that with the following facts admitted by the government as undisputed, defense counsel does not anticipate the need for an evidentiary hearing.[1] However, if on reply Singh identifies other

---

[1] Singh initially requested that the government "specifically identify which facts it disputes" from Singh's Statement of Facts. Dkt. 19 at 3 n.2. In response, the government notes that the first paragraph and much of the second paragraph of that Statement are based on Singh's asylum application or other documents that Singh or his lawyer drafted. Those facts will be addressed in a separate immigration proceeding, and undersigned counsel is not in a position to dispute or accept them, and so disputes them for purposes of this motion. The government also believes that the third, fifth, sixth, seventh, eighth, and fourteenth paragraphs are not directly relevant to

Opposition to Singh Motion to Dismiss (Dkt. 19) - 2
*United States* v. *Singh*, No. CR20-85-RAJ 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

facts that he believes are necessary to the Court's resolution of this motion, the government is happy to provide supplemental briefing on whether those facts are or are not disputed.

### A.   Singh's conduct in the United Kingdom.

In the fall of 2014, Singh was living with his wife and child in the United Kingdom, and had been for several years. In November of that year, Singh was arrested for allegedly, on three occasions, boarding a public bus and sexually touching two young female victims. Singh was arrested for two such offenses on November 5, 2014 and charged with two counts of "Sexual Assault of Female Child Under 13." USA_00000335. Singh was then arrested on a third such offense on November 18, 2014, and charged with "Sexual Assault – Intentionally Touch Female – No Penetration." USA_00000270; USA_00000334.

### B.   Singh's travel to the United States.

Singh was released on bail. On November 24, 2014, six days after his second arrest, Singh applied for a visa to the United States.[2]

On his visa application, under penalty of perjury, Singh answered "No" to the following question: "Have you ever been arrested or convicted for any offense or crime,

---

the legal claims Singh raises. Some of those paragraphs also describe activity in Singh's asylum case from several years ago, and the government has not yet verified all of the facts asserted by Singh surrounding those activities. But after discussion with defense counsel, the government believes that the facts in the government's Statement of Facts are sufficient to resolve Singh's motion to dismiss, again with the caveat that if Singh or this Court disagree, the government is willing to submit additional briefing on whether any of those facts are disputed.

[2] Singh claims he was "told that he would not be granted asylum in the United Kingdom," and so "sought to relocate away from India by getting a visa to go to the United States." Dkt. 19 at 3. While not directly relevant to this motion, Singh's implication that he simply happened to move to the United States at that time, in order to evade persecution in India, is belied by the evidence. Singh's only support for his claim that he could not have been granted asylum in the United Kingdom is his own statement, in his asylum paperwork, that he did not seek asylum in the United Kingdom because an unspecified person told him he would not receive it. USA_00000702. Moreover, the facts regarding Singh's visa application and departure to the United States—Singh, after living in the United Kingdom for years, applied for a visa six days after his second arrest; lied about having been arrested twice in the past month in order to obtain the visa; took his entire family to the United States instead of appearing for his court dates; and then never appeared for the return flight he had booked—make clear that Singh was a fugitive child-sex-offender on the run, not an individual fleeing persecution.

Opposition to Singh Motion to Dismiss (Dkt. 19) - 3
*United States* v. *Singh*, No. CR20-85-RAJ 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

even though subject of a pardon, amnesty, or similar action?" USA_00000769. Singh entered the United States on a visitor visa on January 22, 2015, and did not appear for his return flight to the United Kingdom.

Singh was convicted in absentia on May 5, 2015, and sentenced to one year's imprisonment. USA_00000345. The government agrees that by this time, most of the records later sought by the United States in its MLAT request regarding Singh's arrests and convictions would have been in the possession of the United Kingdom.

Singh subsequently applied for asylum in the United States. That application included a copy of the visa contained in his passport. USA_00000706. That asylum application was received on July 20, 2015. USA_00000754. Singh claimed in his asylum application that he had been arrested in India, but did not disclose his arrests or conviction in the United Kingdom. In his asylum interview in September 2017, Singh again denied under oath ever having been convicted or arrested for a crime. USA_00000880. He also denied under oath having ever committed a crime, irrespective of an arrest or conviction. *Id.*

The government agrees, as Singh recounts, that by August 2015, at least some individuals within the Department of Homeland Security were aware that Singh had been convicted of a crime in the United Kingdom, even if they did not know the details of that crime. *See* Dkt. 19 at 5. The government further agrees that those individuals, having received Singh's asylum application, were aware that Singh had applied for asylum, was living in the United States, and could be contacted if necessary. *See id.* Individuals within USCIS and DHS had further conversations regarding Singh's status as an asylum-seeker, his address in the United States, and his criminal history in January 2017. *See* USA_00000939-41.

**C.    The United States' Mutual Legal Assistance Treaty (MLAT) request.**

On April 3, 2018, the United States submitted an MLAT request to the United Kingdom for the following evidence:

- The complete case files for Singh's sexual assault cases;

Opposition to Singh Motion to Dismiss (Dkt. 19) - 4
*United States* v. *Singh*, No. CR20-85-RAJ 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Any CCTV video depicting the assaults;
- Copies of any other evidence collected in these cases including Singh's business card provided to the victim;
- Any records of interviews conducted with Singh the victims or any witnesses to the assaults;
- All police reports generated relating to the assaults;
- All records of court proceedings related to these cases;
- Records of Singh's convictions in absentia;
- National Fingerprint Forms for Singh;
- Photographs taken of Singh;
- Form MG 4 Charges for Singh;
- Any documents evidencing Singh's arrest and bond;
- Any reports to the Crown Prosecutor for Charging Decisions; and
- Official records related to Singh's arrival to and departure from the United Kingdom for the period of September 2014 to the present.

*See* USA_00000850.  The United States also requested that an appropriate custodian prepare a certificate to certify the authenticity of those records so that they could be admitted into evidence.  USA_00000850-852.

Over the ensuing two years, the United States received several partial responses to that MLAT request.  On February 8, 2019, the Department of Justice attaché in London sent to this office certain records from the United Kingdom relating to Singh's arrivals to and departures from the United Kingdom.  *See* USA_00000856.  On May 7, 2019, the attaché transmitted additional immigration records from the United Kingdom.  USA_00000872-73.  The United Kingdom did not send in either production, however, any of the certified copies of the records associated with Singh's arrests and convictions that were the subject of the bulk of the MLAT request.  The Special Assistant United States Attorney on the case replied to the attaché explaining as much, and the attaché confirmed that the United Kingdom was still working on producing those documents.  *See* Exhibit C

Opposition to Singh Motion to Dismiss (Dkt. 19) - 5
*United States* v. *Singh*, No. CR20-85-RAJ 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(emails between Special Assistant United States Attorney Joseph Silvio and U.S. Department of Justice attaché at U.S. Embassy in London).[3]

On April 1, 2020, in response to an email from undersigned counsel, the U.S. Embassy in London confirmed that it had "checked with the UKCA on [the United States' MLAT] request and the remaining materials on March 28th and was told it is currently in the process of being executed by the [London] Metropolitan Police." *See* Exhibit D (emails between Legal Advisor/International Affairs Specialist Amanda June Chadwick and Assistant United States Attorney William Dreher). On April 6, 2020, the United States applied to the Chief Judge of this District for an order suspending the statute of limitations on all charges arising out of Singh's submission of false immigration documents and making of false statements to immigration authorities. *See* Exhibit B. In that application, in a sworn affidavit, Special Agent James Shannon explained that the United Kingdom had confirmed as of March 28, 2020 that it was still working on a response to the United States' MLAT request. *Id.* at 8.

The U.S. Attorney's Office did not receive the certified copies of the records associated with Singh's arrests and conviction until July 7, 2020. *See* Exhibit E (letter accompanying that production). The certification accompanying those records was dated June 15, 2020. *See* USA_00000026. Certain records were not in the proper format or were incomplete or missing, however, and the United States continues to work with the United Kingdom to ensure it has a complete response to its MLAT request.

On July 22, 2020, Singh was indicted in a four-count Indictment. Count One of that Indictment charged Singh under 18 U.S.C. § 1546(a) with subscribing a false statement on

---

[3] The internal Department of Justice communications in Exhibits C, D, and E were not provided to defense counsel as part of the United States' initial discovery production in this case. The communications have been redacted to remove attorney work-product, such as analysis by Department of Justice attorneys of the evidence in the case. The government has communicated to defense counsel its willingness to confer regarding additional discovery requests should defense counsel believe additional discovery is relevant to Singh's reply brief.

Opposition to Singh Motion to Dismiss (Dkt. 19) - 6
*United States* v. *Singh*, No. CR20-85-RAJ 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the visa application he submitted on November 24, 2014.  *See* Dkt. 1 at 1.  Count Two of that Indictment charged Singh under the same statute with "us[ing]" that fraudulently obtained visa to attempt to obtain asylum by including a copy of that visa in his asylum application, which was received by the United States government on July 20, 2015.

## II.   ARGUMENT

Singh does not dispute that Counts Three and Four of the Indictment are timely.  His motion argues only that Counts One and Two are untimely, notwithstanding the court's entry of a Section 3292 order suspending the statute of limitations on those Counts.  Singh first attempts to establish that the statute of limitations on Counts One and Two would have (aside from the Section 3292 order) run by July 22, 2020.  *See* Dkt. 19 at 9-15.  He then argues that, for four reasons, the Section 3292 order did not suspend the statute of limitations.  These arguments are taken in turn below.

**A.   The government agrees, for the limited purpose of this motion, that the limitations period on Counts One and Two began prior to July 22, 2015.**

Singh first must establish that the statute of limitations on Counts One and Two had run by July 22, 2020.  Because, as he agrees, a five-year statute of limitations applies to these Counts, he argues that the limitations period began on both counts prior to July 22, 2015.  Given the Section 3292 order in this case, the government is willing to stipulate for purposes of this motion that the limitations period on Counts One and Two began prior to July 22, 2015.

With respect to Count One, Singh contends that the limitations period began running on November 24, 2014, when he subscribed his name to the visa application containing a false statement.  Dkt. 19 at 9-10.  This offense can be a continuing offense; for example, in *United States v. Pace*, 314 F.3d 344, 352 (9th Cir. 2002), the Ninth Circuit concluded (in the venue context)[4] that subscribing a false statement "commences when one furnishes

---

[4] Singh contends that because *Pace* is a venue case, it is inapposite. Dkt. 19 at 10. But the Court's reasoning about when a false-statement offense begins and ends applies with equal force in the limitations context.

Opposition to Singh Motion to Dismiss (Dkt. 19) - 7
*United States* v. *Singh*, No. CR20-85-RAJ 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information . . . and is not completed until the information is received by the party to whom it is addressed." *Id.* Still, even under *Pace*'s definition of when a false-statement offense ends, the offense charged in Count One presumably ended when the visa was received by the United States in November of 2014, well before July 22, 2015.

Count Two is arguably situated differently. Singh's "use" of his fraudulently obtained visa did not necessarily end with his mailing of a copy of that visa along with his asylum application; it arguably continued until Singh's "use" of the visa accomplished his purpose of obtaining asylum. The government acknowledges that while this issue has not been decided by the Ninth Circuit, the Fifth Circuit has held to the contrary, as Singh notes. Dkt. 19 at 11 (citing *United States v. Tavarez-Levario*, 788 F.3d 433, 440 (5th Cir. 2015)). Here, because the Section 3292 order in this case makes Counts One and Two timely under binding Ninth Circuit precedent, *see infra*, the government will stipulate for purposes of this motion that Singh's "use" of his visa ended on July 20, 2015, when the government received a copy of that visa in Singh's asylum application.[5] The government reserves the right to argue otherwise, however, if this issue arises on appeal.

**B.    The Section 3292 order in this case suspended the statute of limitations on Counts One and Two, making both counts timely.**

Singh next must establish that, if the limitations periods on Counts One and Two would have otherwise expired by July 22, 2020, the Section 3292 order in this case did not suspend the statute of limitations periods for Counts One and Two a sufficient length of time to render those counts timely as of July 22, 2020, when Singh was indicted. Singh makes four sub-arguments in an attempt to do so: 1) the Section 3292 order cannot "revive" the statute of limitations on Count One, because that limitations period expired before April 6, 2020, when the government obtained that order; 2) the MLAT request was

---

[5] Singh contends that he mailed in his passport and visa (not merely copies of both) with his asylum application. *See* Dkt. 19 at 14-15 n.8. The government understands that only copies of those documents were submitted. But that issue is not important in light of the government's stipulation.

Opposition to Singh Motion to Dismiss (Dkt. 19) - 8
*United States* v. *Singh*, No. CR20-85-RAJ 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

overbroad in that it sought some evidence not relevant to the charges in the Indictment; 3) the government did not need the evidence sought by the MLAT because it had uncertified copies of some of the same documents it was seeking; and 4) the United Kingdom took "final action" on the MLAT request in May 2019. All four arguments are meritless.

**1. As Singh concedes, binding Ninth Circuit case law holds that a Section 3292 order can suspend a statute of limitations period, even if that period would have otherwise expired prior to the entry of the order.**

Singh's primary argument is that the government's motion under Section 3292 of cannot "revive" the limitations period applicable to Count One, because that period expired prior to the Section 3292 order on April 6, 2020. Dkt. 19 at 15-18.

Section 3292(a)(1) states:

> Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3292(a)(1). Section 3292(b) provides that the "period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request." *Id.* § 3292(b).

Here, the "official request" (an MLAT) occurred on April 3, 2018. According to Singh, because the limitations period on Count One would have expired on November 24, 2019, and the government obtained its Section 3292 order after that date (on April 6, 2020), this Court should hold that the order did not suspend the running of that statute of limitations. Dkt. 19 at 15-18.[6]

---

[6] As Singh acknowledges, Dkt. 19 at 15, this argument does not apply to Count Two. Even according to Singh, that count's limitations period began running on July 20, 2015, Dkt. 19 at 12,

Opposition to Singh Motion to Dismiss (Dkt. 19) - 9
*United States* v. *Singh*, No. CR20-85-RAJ 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

But, as Singh eventually concedes, Dkt. 19 at 16, his approach would run afoul of binding Ninth Circuit precedent. The Ninth Circuit has squarely held that a Section 3292 order can suspend the running of a statute of limitations, *even if* the limitations period would have run between when the "official request" was made and when the Section 3292 order issues.

The Ninth Circuit first so held in *United States v. Bischel*, 61 F.3d 1429, 1434 (9th Cir. 1995). There, the government had submitted its "official request" (in that case, a letter rogatory rather than an MLAT) on July 27, 1989, but had not received an order suspending the statute of limitations until four months later, on November 20, 1989. *Id.* The defendant argued on appeal that by November, "offenses committed between July 27, 1984 and November 20, 1984," more than a dozen counts, "had already expired," Brief of Appellant, *Bischel*, 61 F.3d 1429, 1994 WL 16506778, at *17, and so the Court's Section 3292 order could not "revive or extend [those] expired period of limitations." *Bischel*, 61 F.3d at 1434. The Ninth Circuit disagreed. The Court explained that "Section 3292(b) itself states that the suspension period 'shall begin on the date on which the official request is made,'" and that Section "3292(a)(1) requires the court to find that an official request 'has been made' before entering an order suspending the statute of limitations." *Id.* "Thus, the statute plainly contemplates that the starting point for tolling the limitations period is the official request for evidence, not the date the § 3292 motion is made or granted." *Id.* Moreover, nothing in the statute expressly requires that the order issue before the limitations period would otherwise expire, as long as the "official request" occurs before that date.

In *United States v. Jenkins*, the Ninth Circuit reaffirmed its interpretation, and made clear that a Section 3292 order can suspend the running of a statute of limitations even if the order comes *after* the limitations period would otherwise have expired, so long as the

---

and so could not have expired before July 20, 2020, months *after* the government obtained the Section 3292 order in this case.

Opposition to Singh Motion to Dismiss (Dkt. 19) - 10
*United States* v. *Singh*, No. CR20-85-RAJ 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"official request" occurs before that limitations period would have expired. 633 F.3d 788, 799 (9th Cir. 2011).[7]

Singh points out that the "length of time between the MLAT request and the granting of the [Section] 3292 motion was brief" in *Bischel* and *Jenkins*, whereas in this case it was two years. Dkt. 19 at 17. Singh does not, however, explain why that matters. The six-month period of time in *Bischel* was more impactful than the two-year period here, as more than a dozen counts' limitations periods expired in the six months between the letter rogatory and the date of the Section 3292 order. *See supra*. Yet nothing in *Bischel* or *Jenkins* suggests that the period between the official request and Section 3292 order was relevant to its decision. Instead, *Bischel* and *Jenkins* make clear they are setting forth a categorical rule that a Section 3292 order can extend the limitations period for an offense so long as the "official request" comes before the limitations period expires, even if the Section 3292 order is not sought or obtained until after that period expires. Moreover, there is no cause for concern about unlimited extensions, as Section 3292 itself requires that the suspension of the limitations period "shall not exceed three years." 18 U.S.C. § 3292(c). Given that express command, it would be particularly inappropriate (and contrary to *Bischel* and *Jenkins*) to read into the statute a separate, implicit requirement that the government move more quickly than necessary to fit within the statute's express deadlines.

Singh argues that *Bischel*'s rule leads to absurd results. But Singh's example actually highlights precisely why the statute has to work in the way *Bischel* envisions.

---

[7] While the Second Circuit has disagreed with *Bischel*, *see United States v. Kozeny*, 541 F.3d 166, 173-74 (2d Cir. 2008), a majority of the only other circuit panel to have addressed the question agreed in *dicta* with the Ninth Circuit, not the Second. *See United States v. Hoffecker*, 530 F.3d 137, 163 n.4 (3d Cir. 2008). As the Third Circuit panel in *Hoffecker* explained, a Section 3292 order always follows the official request, as the latter is a prerequisite for the former. *Id.* Given that the statute requires that the limitations period be extended from "the date on which the official request is made," 18 U.S.C. 3292(a), every Section 3292 order in some sense retroactively extends a limitations period as of a prior date. Thus, it is not strange that the statute can suspend a statute of limitations that otherwise would have expired.

Opposition to Singh Motion to Dismiss (Dkt. 19) - 11
*United States* v. *Singh*, No. CR20-85-RAJ 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Singh complains that the government could file its "official request" the day before a limitations period expires, and then obtain a Section 3292 order after the limitations period. *See* Dkt. 19 at 17. But that would seem to be the precise scenario when Section 3292 would operate as Congress intended. After all, if the government had become aware of *domestic* evidence of criminal activity the day before a limitations period expired, the government could file an indictment or information and have at least the theoretical ability to obtain that evidence before trial. By contrast, if the government becomes aware of *foreign* evidence of criminal activity that late in the limitations period, through no fault of the government, it is unlikely to be able to obtain that evidence in time for trial if it were forced to file a charging instrument prior to the limitations period expiring the next day. Section 3292 addresses that difficulty. Moreover, if the government submitted its "official request" the day before the limitations period expired, it would be difficult, if not practically impossible, to also compile and file an application for, and receive, an order under Section 3292 that same day. The order would likely issue a few days later, after the limitations period would otherwise have run. In that scenario, the time necessary just to obtain a Section 3292 order itself would run out the statute of limitations—plainly not what Congress intended. Thus, in exactly the hypothetical Singh provides, Section 3292 could not practically operate without having the Section 3292 order retroactively "revive" (in Singh's parlance) an otherwise-expired statute of limitations.[8]

In any event, those two arguments from Singh are ultimately irrelevant: Singh concedes that the Ninth Circuit's interpretation of Section 3292 would have to be

---

[8] Singh also contends that a 1993 EOUSA manual recommendation that the government file the Section 3292 application before the statute of limitations would otherwise run somehow means that the government views Section 3292 as "ambiguous." Dkt. 19 at 18. The reality is more benign, as other courts have recognized: "Since at least some courts," like *Kozeny*, "have required the application to be filed within the statutory period, it is natural that the Department has erred on the safe side and instructed all of its attorneys to do so. This does not imply that the Department of Justice itself interprets section 3292 to require filing before the statutory period expires." *United States v. Daniels*, No. C 09-00862 MHP, 2010 WL 2680649, at *4 (N.D. Cal. July 6, 2010).

Opposition to Singh Motion to Dismiss (Dkt. 19) - 12
*United States* v. *Singh*, No. CR20-85-RAJ 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"overturned" in order for Singh's argument to prevail. Dkt. 19 at 16. This Court, of course, cannot overturn *Bischel*, and is bound by the Ninth Circuit's interpretation of Section 3292. Pursuant to that interpretation, "the only temporal requirements of a § 3292 application are (1) that the official request for evidence in a foreign country be made before the statute of limitations expires and (2) that the application for suspension be submitted to the district court before the indictment is filed." *Jenkins*, 633 F.3d at 799. Singh does not dispute that those requirements were met in this case: 1) the MLAT request was made before (for Count One) November 24, 2019, when Singh claims the statute of limitations expired; and 2) the application for the Section 3292 order was submitted on April 6, 2020, before the indictment was filed on July 22, 2020. Therefore, the Section 3292 order properly extended the limitations period of Count One.

**2. The MLAT request was not overbroad, and even if it was, that would not impact the validity of the Section 3292 order's suspension of the limitations period for Counts One and Two.**

Singh next contends that the government's request for evidence was overbroad, because some of the "evidence the Government requested . . . was related to the events underlying his arrest and conviction in the United Kingdom, not simply the fact that he was arrested or convicted while in London." Dkt. 19 at 20. According to Singh, only the latter was "needed" to convict him on the charges in the Indictment. Dkt. 19 at 20. In other words, Singh contends that if the government's "official request" seeks more than the evidence "needed" to convict the defendant on the charges later filed, the Section 3292 order cannot suspend the statute of limitations applicable to those charges. That argument is foreclosed by precedent and the text of Section 3292, and would constrain the government's investigation of foreign evidence in absurd ways.

Singh does not appear to dispute that *some* of the evidence the government's MLAT sought was relevant to the charges Singh now faces. As Singh notes, Section 3292 itself requires that the government have sought evidence of "the offense" for which the government seeks to extend the limitations period. 18 U.S.C. § 3292(a)(1). Accordingly, Ninth Circuit cases addressing Section 3292 have involved requests for evidence at least

Opposition to Singh Motion to Dismiss (Dkt. 19) - 13
*United States* v. *Singh*, No. CR20-85-RAJ 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

some of which related to the offenses later charged. *See* Dkt. 19 at 18-20 (listing several such cases). Singh interprets these cases to require that the evidence sought be at least "connected to the specific offense the government seeks to charge," Dkt. 19 at 18, in order for a Section 3292 order to apply. Here, Singh appears to agree that evidence of "the fact that [Singh] was arrested or convicted"—including, for example, the reports detailing his arrest, the fingerprints and booking photographs taken when he was arrested, the interview of him conducted after he was arrested, the statements of charges brought against him, and the record of his conviction, *see* USA_00000850—would be evidence connected to the specific offenses the government later charged. There is thus no apparent dispute that at least some of the evidence sought by the government's MLAT was evidence of the charges Singh now faces.

The only question is whether, as Singh contends, the statute requires that *all* of the evidence sought by the MLAT have been *necessary* to those charges—even viewed in hindsight. The answer, provided by the Ninth Circuit and the statute, is no. Singh's flawed theory would impose an unprecedented and nonsensical limitation on the government's authority under Section 3292.

First, there is no authority for the proposition that the government must limit its "official request" for evidence to the minimum evidence that the defendant (or a Court) later believes is necessary to convict. And the Ninth Circuit has specifically rejected that argument. In *United States v. DeGeorge*, 380 F.3d 1203 (9th Cir. 2004), the defendant argued that the evidence sought by an official request must be "'material or otherwise essential' to the charges." *Id.* at 913. The Ninth Circuit flatly disagreed, referring back to its analysis of the same issue when the defendant had raised it on mandamus:

> DeGeorge asserts that any evidence the government seeks must be essential to bringing charges against the target of the government's investigation. . . . The statute clearly states that the government need only establish that "evidence of an offense," not evidence essential to bringing charges on an offense, is "in [a] foreign country." 18 U.S.C. § 3292(a)(1). DeGeorge's proposed interpretation of the statute would require district courts to make a determination of the value of the foreign evidence the government seeks—to second-guess the government's investigation—which the statute simply does not contemplate.

Opposition to Singh Motion to Dismiss (Dkt. 19) - 14
*United States* v. *Singh*, No. CR20-85-RAJ 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*DeGeorge v. U.S. Dist. Court for Cent. Dist. of California*, 219 F.3d 930, 938-39 (9th Cir. 2000). At least one other court has agreed. *See United States v. Benscher*, 2016 WL 279398, at *5 (M.D. Fla. Jan. 22, 2016) ("the Court rejects Defendant's argument[] that § 3292 tolling is contingent on showing that the foreign evidence sought is 'necessary' . . .").

Second, as *DeGeorge* indicates, Section 3292's text itself refutes Singh's proposed limitation. As long as "evidence of an offense" reasonably appears to be in the foreign country and is sought by an "official request," the statute requires that the limitations period be suspended. 18 U.S.C. § 3292(a)(1). The statute does *not* require that the "official request" *only* seek the evidence of the particular offense that is later charged. As just noted, Singh appears to agree that there was *some* "evidence of [the] offense[s]" charged in Counts One and Two in the United Kingdom that was sought by the government's MLAT—the evidence establishing "the fact that he *was* arrested or convicted while in London," Dkt. 19 at 20, like his booking forms and fingerprints. That is sufficient to require, under Section 3292, the suspension of those charges' limitations period.

Third, Singh's proposed requirement would have absurd consequences. Even setting aside *DeGeorge*'s concern that it would require second-guessing the government's investigation, Singh's proposal would mean that the government could never seek foreign evidence for purposes of investigating multiple crimes and then decide not to charge some of those crimes—because if it did so, the fact that it had requested the evidence of the uncharged crimes would apparently invalidate its Section 3292 order. Or, if the government used an MLAT to seek, for example, business records using search terms aimed at finding evidence of a crime, and even *one* request turned up some irrelevant evidence, it would retroactively invalidate the government's Section 3292 order. The limits of that position are unclear: Would it be problematic if the government's MLAT sought all pages of a bank account statement, even though only *some* pages have fraudulent wire activity on it? What if the government is seeking evidence that is not evidence of a crime, but may be exculpatory material—is Singh's view that a prosecutor seeking

Opposition to Singh Motion to Dismiss (Dkt. 19) - 15
*United States* v. *Singh*, No. CR20-85-RAJ 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

potential exculpatory material would invalidate his or her Section 3292 order? What if the request seeks evidence with respect to an offender that the government later decides, in its prosecutorial discretion, is not worth prosecuting? There are no good answers to those questions under Singh's theory.

Fourth, Singh's objection seems poorly suited to the facts of this case. The evidence Singh cites (that "related to the *events underlying* his arrest and conviction," Dkt. 19 at 20) *is* at least arguably relevant to the charges in Counts One and Two. For example, video of Singh committing those offenses would be relevant to identity—making it more likely that Singh (who looks just like the individual in the CCTV video) was indeed the individual later arrested for those offenses. The victims' account of the offense could produce evidence (like, in this case, the detail that Singh slipped a business card with his phone number on it into her pocket) that could also be relevant to identity. Singh now apparently believes the government's other evidence that he was the individual arrested is overwhelming. But the government is not required to anticipate that a defendant may concede issues in a criminal case and then decline to seek circumstantial, supporting evidence on those issues.

Finally, the evidence Singh identifies was certainly relevant to *potential* criminal conduct that is integrally related with the conduct charged by the government. In Singh's asylum interview, he was asked not only whether he had been arrested for any offenses, but also whether he had *committed* any offenses, even if he had not been arrested. USA_00000880. He lied both times. Thus, evidence of Singh's commission of those offenses was relevant to the government's investigation of Singh's criminal conduct, which included lying not only about his arrests, but also about his underlying criminal conduct. That the government opted ultimately not to tack on an additional count for that additional lie does not retroactively invalidate its Section 3292 order.

In sum, Singh's proposed requirement that the evidence sought by an "official request" under Section 3292 all be necessary to the ultimate charges brought is foreclosed

Opposition to Singh Motion to Dismiss (Dkt. 19) - 16
*United States* v. *Singh*, No. CR20-85-RAJ 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

by precedent, contrary to the statute's text, and likely to have dramatic and absurd consequences. The Court should not reject its application.

**3. That the government had informally received uncertified copies of some records sought by the MLAT does not affect the validity of the Section 3292 order.**

Singh next contends that the government "had already received all of the evidence that the United Kingdom had related to Mr. Singh," and that the government could not seek a Section 3292 order just to wait for certified copies of that same evidence. Dkt. 19 at 20-21. The Ninth Circuit has rejected this type of argument twice before. First, in *Bischel*, the Court explained:

> [C]onstruing the concept of "final action" to include a dispositive response to each item set out in the official request, *including a request for certification*, is consistent with the statutory structure and legislative history. It also makes practical sense. . . . *"Evidence of an offense" is essentially worthless unless admissible. Admissibility turns in part on authenticity. Fed.R.Evid. 902(3). Thus, certifying that primary evidence is what it purports to be is inevitably part of the "evidence of an offense" within the meaning of § 3292(a)(1).*
>
> We also look at legislative history here because the statutory words "final action" do not unambiguously resolve the interpretational task we face. Our construction comports with the legislative history indicating that § 3292 . . . was prompted by concern both for the difficulty of obtaining records in other countries, and of admitting them into evidence. . . . [Bischel] would have us hold that "final action" takes place when the last of the records requested has been received. However, there is no ready way of knowing when the last of anything has happened. Instead, pegging "final action" to disposition, up or down, of each of the items in the official request provides a more certain benchmark by which to measure whether the action that has been taken is "final" or not. We therefore conclude that "final action" for purposes of § 3292 means a dispositive response by the foreign sovereign to both the request for records and for a certificate of authenticity of those records, as both were identified in the "official request."

*Bischel*, 61 F.3d at 1433-34 (emphases added) (footnotes and citations omitted). As this passage from *Bischel* makes clear, allowing the government to wait for copies of records that have been certified by a foreign custodian of those records is, in many ways, the primary point of Section 3292. *Id.* Accordingly, because "final action" does not occur until the foreign sovereign provides "a certificate of authenticity of those records" or

Opposition to Singh Motion to Dismiss (Dkt. 19) - 17
*United States* v. *Singh*, No. CR20-85-RAJ 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

refuses to do so, the government can seek a Section 3292 order to suspend the limitations period if the government is waiting on certified copies of records it has already informally received. *Id.* Singh cites no authority to the contrary.

Then, in *DeGeorge*, 380 F.3d 1203, the defendant argued that "a district court may issue an order under § 3292 suspending the statute of limitations only if the government is seeking evidence that 1) is not already in its possession . . . ." *Id.* at 1213. (In that case, the defendant contended that government already had the records sought as a result of a civil proceeding. *DeGeorge v. U.S. Dist. Court for Cent. Dist. of California*, 219 F.3d 930, 939 (9th Cir. 2000)). The Ninth Circuit disagreed, concluding that that "interpretation of 'evidence' in section 3292(a)(1) is entirely without textual support in the statute or in the reality of grand jury investigations.'" *Id.* (quoting *DeGeorge*, 219 F.3d at 937).

Thus, although the government appreciates Singh's concession that the documents the government had were "reliable evidence" that Singh would apparently not object to the admission of, Dkt. 19 at 20, the government was not required to assume that Singh would be so cooperative. Section 3292 permitted the government to wait for certified copies of those records before proceeding to indict.

**4. The government replied to the May 7, 2019 letter, making clear the United Kingdom had taken "final action" on the "official request."**

Singh's final argument is that the United Kingdom took "final action" on the government's MLAT on May 7, 2019. Singh cites a May 7, 2019 letter from the Department of Justice's attaché in London, which stated that it was enclosing materials from the United Kingdom, and then concluded: "If we do not hear from you within 30 days, we will close the matter as granted." USA_00000872. Singh asserts that the U.S. Attorney's Office never replied to the May 7, 2019 letter within 30 days, and that this Court should conclude that the United Kingdom took "final action" on the MLAT solely because the "Embassy in London . . . believed that this issue was closed according to its own letter." Dkt. 19 at 23. That argument is wrong.

Opposition to Singh Motion to Dismiss (Dkt. 19) - 18
*United States* v. *Singh*, No. CR20-85-RAJ 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

As just explained, the Ninth Circuit held in *Bischel* that: "[P]egging 'final action' to disposition, up or down, of each of the items in the official request provides a more certain benchmark by which to measure whether the action that has been taken is 'final' or not. We therefore conclude that 'final action' for purposes of § 3292 means a dispositive response by the foreign sovereign to both the request for records and for a certificate of authenticity of those records, as both were identified in the 'official request.'" *Bischel*, 61 F.3d at 1434. Thus, the United Kingdom did not take "final action" on the MLAT request until it had disposed, up or down, on "each of the items in the official request," including "both the request for records and for a certificate of authenticity of those records." *Id.*; *see DeGeorge*, 380 F.3d at 1215 ("Because the Italian government did not at any time indicate, up or down, its ability to locate and produce the two missing witnesses, . . . there was no 'final action.'") That occurred, at the earliest, in June 2020, when the United Kingdom finally sent certified versions of a significant majority of the documents requested by the MLAT. *See* Dkt. 19 at 8 (agreeing that the United Kingdom produced these documents in June 2020). Those documents were received by the U.S. Attorney's Office on July 7, 2020. *See* Exhibit E. There is no dispute that in May *2019*—the time when Singh claims the United Kingdom had taken "final action"—the United Kingdom had not yet provided those certified records. Singh's argument is thus foreclosed by *Bischel*'s definition of what constitutes "final action," which in this case could not have occurred earlier than June 2020 given the undisputed facts. Even if the SAUSA had never replied to this May 7, 2019 communication, a single sentence in an internal communication from a Department of Justice attaché cannot, under *Bischel*, change when the United Kingdom in fact took "final action" on the government's MLAT request.

But regardless, the SAUSA in this case did reply to the attaché. *See* Exhibit C. On May 9, 2019, the SAUSA stated: "Is the UK still working on the outstanding materials related to the criminal matters? . . . Are they still working on these materials? If not, can we see if they will provide at least booking documents, photos, fingerprints, and any release paperwork?" *Id.* at 2-3. The individual from the attaché's office replied on May 17, 2019,

Opposition to Singh Motion to Dismiss (Dkt. 19) - 19
*United States* v. *Singh*, No. CR20-85-RAJ 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that, following conversations with the United Kingdom, his "understanding" was that most of the remaining documents requested were "all in the process of being collected and produced" by the United Kingdom. *Id.* at 1. Thus, Singh's first assumption is incorrect—the SAUSA noted that the United Kingdom's response was incomplete, and the United Kingdom then confirmed that it *also* viewed its response as incomplete and was continuing to work on that response. The United Kingdom's understanding is further confirmed by the fact that it, as noted earlier, confirmed again on March 28, 2020 that it was continuing to work on locating and certifying the documents requested by the MLAT, and that it finally produced those documents in the summer of 2020. *See supra*.

### III.    CONCLUSION

Singh's motion to dismiss should be denied. After conferring with defense counsel, the government does not believe that an evidentiary hearing is necessary, as the relevant facts appear to be undisputed.

DATED this 1st day of September, 2020.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

/s/ *William Dreher*
WILLIAM DREHER

Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone:    (206) 553-4579

Opposition to Singh Motion to Dismiss (Dkt. 19) - 20
*United States* v. *Singh*, No. CR20-85-RAJ 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970